■ ADELINE STERNEMANN, Respondent, v HAROLD LANGS et al., Appellants, et al., Defendants. — In a medical malpractice action, defendants Langs, Mesbah and Singh appeal from a judgment of the Supreme Court, Kings County (Monteleone, J.), dated May 19, 1981, which, upon a jury verdict, was in favor of the plaintiff and against them in the principal sum of $2,026,000. Judgment affirmed, with costs. This is a medical malpractice action in which the plaintiff allegedly sustained an injury to her ulnar nerve during an operation to remove her right first rib and right cervical rib resulting in a condition known as causalgia. The jury's finding with respect to the second interrogatory submitted to it, which determined that the plaintiff sustained her burden of proving malpractice on the part of Drs. Langs, Mesbah and Singh in failing to secure a neurological consultation prior to making their decision to perform the operation, is not contrary to the weight of the credible evidence and must therefore be affirmed. In this regard we note that one of the plaintiff's experts, a neurologist named Dr. Horowitz, testified in answer to a hypothetical question predicated on the plaintiff's preoperative condition, that he would have initially prescribed a regimen of physiotherapy rather than surgery. That testimony is probative on the issue of whether a neurological consultation would have resulted in a recommendation for surgery. The weight to be afforded the conflicting testimony of experts is a matter peculiarly within the province of the jury (cf. *Commercial Cas. Ins. Co. v Roman,* 269 NY 451, 456-457; *People v Lancaster,* 65 AD2d 761; *Matter of Commissioner of Welfare of City of N. Y. v Simon,* 20 AD2d 865, 866). In addition, so much of the jury's answer to the third interrogatory submitted to it (Special Finding No. 3), as determined that the plaintiff has successfully established that her ulnar nerve had been negligently injured during the course of the operation by Drs. Singh and Mesbah, resulting in causalgia, is also supported by the credible evidence. However, the parallel factual finding with respect to Dr. Langs, who was not even present in the operating theater at the time of the operation, must be reversed. A new trial as to Dr. Langs on that issue is not required, however, in view of the fact that the verdict against him based on his failure to secure a neurological consultation is sustained. As regards certain of the trial court's evidentiary rulings, we note that under the facts of the instant case, plaintiff's unintentional failure to reveal to the appellants the empirical test data supporting Dr. Horowitz' disclosure that his September, 1979 electromyographic examination of the plaintiff had revealed "only * * * minimal abnormalities", was not prejudicial to the appellants and did not require the total exclusion of Dr. Horowitz' trial testimony (22 NYCRR 672.8; cf. *Valenti v*

*Chanice,* 75 AD2d 850). Moreover, the trial court did not abuse its discretion in denying the appellants' application to permit them to withhold a potential witness, Dr. Alkaitis, without being subjected to a missing witness charge (cf. *Marrone v Williamson,* 40 AD2d 873, app withdrawn 32 NY2d 645), or in refusing to admit into evidence certain photographic materials offered by Dr. Alkaitis as to which, *inter alia,* a proper foundation had not been laid (cf. *People v Acevedo,* 40 NY2d 701, 704; *Uss v Town of Oyster Bay,* 37 NY2d 639, 641; *Riddle v Memorial Hosp.,* 43 AD2d 750, 751). The verdict of $1,000,000 for conscious pain and suffering was not excessive in view of the extreme nature of the injuries actually sustained by the plaintiff as a result of the appellants' malpractice. According to the credible evidence, the plaintiff, a 26-year-old mother of three, will suffer constant, excruciating and unremitting pain in her right arm for the balance of her lifetime, which pain is apparently so severe that she cannot bear the touch of cloth or a gust of cold air upon it. As a result, the plaintiff has effectively lost much of the use of her right arm, has been deprived of a social life, can no longer properly care for her young children, has great difficulty sleeping, and cannot even sleep lying down. In fact, the only way that the plaintiff can continue to function is by the constant administration of narcotic medication in ever-increasing quantities, which medication not only affects her perception and services to render her groggy and depressed, but has caused her to become a narcotics addict who will require prolonged institutionalization, on the order of three to six months out of every year, for detoxification the remainder of her life. Under these circumstances, and in view of the evidence indicating that the plaintiff, at the time of trial, had a life expectancy of some 53 years, it simply cannot be said that the award of $1,000,000 in damages for a lifetime of pain and suffering was excessive. We have considered the appellants' remaining contentions and find them to be without merit. Mollen, P. J., Gulotta, Brown and Niehoff, JJ., concur.