(March 21, 1985)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS ESTRADA, Appellant. — Levine, J. Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered April 28, 1982, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts) and grand larceny in the second degree.

On December 13, 1981, the body of Amado Colon was found on the grounds of the Doane Stuart School in the City of Albany. The next morning, the body of Paula Stone was discovered approximately three quarters of a mile away in the CIBRO Petroleum lot in the Port of Albany. Both Colon and Stone had been killed by shotgun blasts.

On December 15, 1981, defendant spoke with an Albany police detective by phone from Baltimore, Maryland, and, after receiving the *Miranda* warnings, told his version of the events which led up to the murders of Colon and Stone. His story, which the police officer later repeated at trial, was that defendant, Stone, their two-year-old son David, Colon (Stone's then current boy-friend) and an unidentified black male were driving in Colon's 1979 Thunderbird on the night of December 12, 1981. Colon was driving, Stone was in the passenger seat with the child, and defendant and the black male were in the back seat. Colon allegedly pulled into a parking lot at the Port of Albany and told defendant to get out of the car so that he (Colon) could talk to Stone. Defendant claimed that he had walked only a short distance from the car when he heard a shot. Returning to the car, defendant allegedly saw Colon emerge from the driver's side carrying a shotgun. Defendant struggled with Colon to get control of the gun. Defendant then stated that he got the gun, and fired two shots at the retreating black male, and then began

to chase Colon. He caught up with Colon on the grounds of the Doane Stuart School, where he shot him once in the head.

The prosecution's version of the events leading up to the murders in question were quite different from defendant's. At trial, the People adduced evidence showing that defendant had returned from Puerto Rico shortly before the killings with the intent of obtaining custody of his son, who was living with his mother, Stone, and her boyfriend, Colon. Defendant had been heard to say on more than one occasion that if Stone and Colon refused to surrender the child, he would kill them. Evidence was also introduced that defendant had recently purchased the shotgun and shells used in the shooting. The foregoing, plus physical evidence recovered from the partly demolished Thunderbird, was used to support the prosecution's theory that defendant was riding alone in the back seat of the car, with Colon, Stone and the child in the front seat. The car stopped on the grounds of the Doane Stuart School. There, defendant shot Stone from the back seat. When Colon fled from the car, defendant pursued and shot him, leaving him on the school grounds. He then drove to the parking lot at the Port of Albany, where he left Stone's body. Defendant next drove his son to New York City, leaving him with defendant's sister. He then continued driving south until his phone call from Baltimore to the Albany police officer.

The jury rejected defendant's story and found him guilty of two counts of second degree murder and a single count of second degree grand larceny for the theft of Colon's car. This appeal ensued.

It is defendant's initial contention that the trial court committed reversible error in permitting the People to present a demonstration to the jury. In it, a man sat in the driver's seat of a 1979 Thunderbird and pointed a shotgun at the passenger's side of the vehicle. The purpose of this demonstration was to show the physical impossibility of firing the gun from the driver's side at someone sitting in the passenger's seat, as defendant had implied Colon had done in shooting Stone, since the interior of the car is only 10 inches wider than the gun is long. Defendant contends that this demonstration deprived him of a fair trial because the conditions thereof were insufficiently similar to those present at the time of the killings, i.e., there was no evidence that the man used for the demonstration was physically similar to Colon, and the car was not the actual car used. This contention is unpersuasive.

Demonstrative evidence is admissible, at the trial court's discretion, so long as the conditions thereof are "sufficiently similar to those existing at the time in question to make the

result achieved by the test relevant to the issue" (Richardson, Evidence § 199, at 174 [Prince 10th ed 1973]; *see, People v Acevedo,* 40 NY2d 701, 704). Here, the conditions of the demonstration were virtually identical to those present on the night in question and so the demonstration was highly relevant to the issue of whether defendant's version of the facts, i.e., that Colon shot Stone from the driver's seat, or the People's version, maintaining that defendant shot Stone from his position in the back seat, was the more plausible. The man used for the demonstration was shown to be approximately the same height and weight as Colon. Further, the People used a 1979 Thunderbird, which was the same make and model as Colon's and which had identical dimensions. (It should be noted that the People could not use Colon's car because it was stripped and burned after defendant abandoned it.) It seems clear that this demonstration played "a positive and helpful role in the ascertainment of truth" (*People v Acevedo, supra,* p 704), and so it was properly conducted before the jury.

Defendant's second contention is that his constitutional right to counsel was violated. He contends that the statement he made over the phone to the Albany police officer, while admittedly made prior to the issuance of an arrest warrant, was made after the Albany police had sent a telex to the National Crime Information Center identifying defendant as a person wanted by the police for questioning. He maintains that the telex constituted a constructive warrant, upon the sending of which his right to counsel was triggered. This argument has been specifically rejected by this court (*People v Davis,* 94 AD2d 900). We note that there was some testimony which indicated that the Albany police sought to have defendant requestioned during the period of time after he had been taken into custody by the Baltimore police but before the arrest warrant was issued in Albany, arguably in an attempt to avoid the strictures established in *People v Samuels* (49 NY2d 218) (*cf. People v Yanus,* 92 AD2d 674, 675). However, no statements made by defendant during this period were offered in evidence at trial. The mere existence of these later statements does not taint the admissibility of defendant's original statement made by phone to the Albany police.

Defendant also contends that the trial court erred in denying his motion to suppress the statement which defendant made over the phone to the Albany police officer on the ground that it was involuntary. The record fully supports the trial court's finding that this statement was voluntary. It was made in a noncustodial setting, in the course of a conversation with the

police which was initiated by defendant, and it was made after he had been given the *Miranda* warnings. There was no indication that defendant was so emotionally distraught at the time of making the statement as to vitiate his waiver of the *Miranda* rights (*cf. People v White,* 85 AD2d 787, 788).

Finally, we are unpersuaded by defendant's contention that the trial court erred in refusing to charge the jury regarding the voluntariness of this statement (*see,* CPL 710.70). The trial court is required to charge the jury on the issue of voluntariness only when this issue has been brought up during the trial and evidence sufficient to raise a factual dispute has been adduced (*People v Cefaro,* 23 NY2d 283, 285, 288). At no time during defendant's trial did he argue that this statement was involuntary. Accordingly, his request for a jury charge on this issue was properly denied.

Judgment affirmed. Mahoney, P. J., Mikoll, Yesawich, Jr., and Levine, JJ., concur.