■ GREGORIA STRINGILE, as Executrix of THOMAS G. STRINGILE, Deceased, Respondent, v JOSEPH ROTHMAN et al., Appellants, et al., Defendants.—In a medical malpractice action to recover damages for wrongful death and conscious pain and suffering, the defendants Joseph Rothman, Robert D. Tick, and the Atlantic Surgical Group, P. C., appeal from a judgment of the Supreme Court, Kings County (Monteleone, J.), entered February 20, 1987, which, upon a jury verdict, is in favor of the plaintiff and against them in the principal sum of $3,000,000 ($2,000,000 for wrongful death and $1,000,000 for conscious pain and suffering), together with interest, costs and disbursements, making a total of $4,102,406.80.

Ordered that the judgment is reversed, on the law and the facts and as an exercise of discretion, without costs or disbursements, and a new trial is granted solely on the issue of damages unless, within 20 days after service upon the plaintiff of a copy of this decision and order together with notice of entry, the plaintiff shall serve and file in the office of the Clerk of the Supreme Court, Kings County, a written stipulation consenting to reduce the verdict as to damages for conscious pain and suffering to the principal sum of $350,000, and to the entry of an amended judgment accordingly; in the event that the plaintiff so stipulates, then the judgment, as so reduced and amended, is modified, on the law, without costs or disbursements, by vacating the award of damages for wrongful death and severing that cause of action, and as so modified, reduced and amended, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for a new trial on the issue of damages for wrongful death. The findings of fact as to liability are affirmed.

This action to recover damages for medical malpractice arises out of the alleged wrongful death of the plaintiff's

husband, the decedent Thomas G. Stringile, on January 20, 1981. The decedent, then 62 years old, was admitted to the defendant Community Hospital of Brooklyn (hereinafter Community Hospital) on January 18, 1981, for the repair of a bilateral inguinal hernia. Surgery was performed by the appellant Dr. Joseph Rothman on January 19, 1981, and, shortly after the surgery while he was still in the recovery room, the decedent began to hemorrhage. At midnight on that day, an exploratory laparotomy was performed by Dr. Rothman and appellant Robert D. Tick, a vascular surgeon, but efforts to stem the bleeding proved unsuccessful. The decedent rallied for a few hours, then went into cardiac arrest and was pronounced dead at 9:40 P.M. on January 20, 1981. An autopsy was subsequently performed at Community Hospital, but the source of the bleeding could not be identified.

The plaintiff Gregoria Stringile, as the executrix of her deceased husband's estate, thereafter commenced this action against Dr. Rothman, Dr. Tick, and their employer, the appellant Atlantic Surgical Group, P. C. Also named as the defendants were the Community Hospital, and Dr. Oommen, a resident who assisted in both operations performed on the decedent.

After a jury trial, Dr. Rothman was found negligent in performing the hernia operation and in his care and treatment of the decedent subsequent to that operation. The jury also found Dr. Rothman and Dr. Tick negligent in the performance of the exploratory laparotomy. In addition, the jury found in favor of the defendants Dr. Oommen and Community Hospital. In their verdict, the jury awarded the sum of $4,500,000 to the plaintiff for wrongful death, of which the sum of $1,200,000 was allocated to loss of earnings. The additional sum of $1,000,000 was awarded for conscious pain and suffering. Fault was apportioned 80% to Dr. Rothman and 20% to Dr. Tick.

Following the denial of a motion by the appellants to set aside the verdict pursuant to CPLR 4404 (a), the trial court found that only an award of $2,000,000 for wrongful death was supported by the evidence, but found the jury's allocation of $1,200,000 for lost wages to be "supported by the evidence". The award of $1,000,000 for conscious pain and suffering was also upheld. The court ordered a new trial on the issue of damages only unless the plaintiff consented to the reduction of the verdict to the total sum of $3,000,000. By stipulation dated January 7, 1987, the plaintiff consented to the reduction, and entry of the judgment appealed from followed.

On the issue of liability, the appellants contend that the plaintiff failed to establish a departure from accepted standards of medical practice or proximate causation because the opinion of the plaintiff's expert, Dr. Jeffrey E. Lavigne, a surgeon, was allegedly based on assumed facts not supported by the evidence. The appellants maintain that, because of this, the judgment should be reversed and the complaint dismissed. We disagree.

While expert testimony must be based on facts supported by the evidence (*Cassano v Hagstrom,* 5 NY2d 643, *rearg denied* 6 NY2d 882), the facts need only be "fairly inferable" from the evidence (*Tarlowe v Metropolitan Ski Slopes,* 28 NY2d 410, 414; *Cross v Board of Educ.,* 49 AD2d 67, 70). Such was the case here.

Dr. Lavigne is board certified in general surgery with a fellowship in vascular surgery who has performed "close to a thousand" inguinal hernia operations. Dr. Lavigne testified that Dr. Rothman deviated from accepted standards of medical practice during the course of the hernia operation because he did not open the transversalis fascia and, thus, could not have visualized the blood vessels at the operative site. The transversalis fascia is the transverse lining of the abdominal cavity between the inner surface of the abdominal musculature and the peritoneum. The peritoneum is the thin sac that lines the abdominal cavity and covers most of the viscera contained therein (Stedman's Medical Dictionary, at 455, 947 [3d ed 1972]). As a result, according to Dr. Lavigne, Dr. Rothman nicked a blood vessel while suturing the hernia repair, thereby causing the hemorrhage.

Moreover, it was Dr. Lavigne's opinion that, when the decedent's blood pressure began to drop in the recovery room at 1:45 P.M. on January 19, 1981, and all other possible causes except bleeding had been ruled out, the proper procedure would have been to take him right back into the operating room, open the transversalis fascia, "see what was bleeding, and put a stitch or two in it to stop it". This, however, was not done. Instead, the decedent received transfusions throughout the afternoon and evening; and, when his condition did not improve, he was brought back into the operating room at about midnight where Dr. Rothman and Dr. Tick performed the exploratory laparotomy.

Again, according to Dr. Lavigne, when the doctors went back in to do the laparotomy, in his opinion they "did not open up the transversalis fascia" and, thus, could not have

gotten at the veins or the arteries to see if they were intact. According to Dr. Lavigne, this was a further deviation from accepted standards of medical practice and, as a result, the decedent continued to bleed. Finally, according to Dr. Lavigne, after the laparotomy when the doctors were faced with a bleeding whose source they could not discover, the proper procedure would been to "put him into a pair of masked trousers, immediately postoperative", call a hospital that handles major cases and transfer him to such a hospital while the decedent was still able to be saved. Instead, the doctors apparently gave up on their efforts to stem the bleeding and, instead, continued to give him blood transfusions right up to the time of his death. Dr. Lavigne concluded that the departures from accepted practice during the hernia operation and the laparotomy, and the failure on the part of the doctors to properly diagnose and treat the source of the bleeding, were the competent and producing causes of the death of the decedent.

Although the testimony of Drs. Rothman and Tick conflicted with that of Dr. Lavigne with regard to whether they removed the transversalis fascia, it is well settled that the weight to be afforded the conflicting testimony of experts is a matter peculiarly within the province of the jury (see, Chodos v Flanzer, 109 AD2d 771; Sternemann v Langs, 93 AD2d 819). The medical testimony revealed a sharp conflict between the testimony of Dr. Lavigne and the appellants concerning the alleged departures from accepted practice and in the causation of the bleeding, its source and whether adequate methods were utilized by them to ascertain and stem the flow of blood. The jury resolved these disputed factual issues in favor of the plaintiff upon a fair interpretation of the evidence, and the liability verdict is not against the weight of the evidence (see, Cohen v Bugatch, 121 AD2d 426; Nicastro v Park, 113 AD2d 129). Therefore, we affirm the verdict in favor of the plaintiff against the appellants on the issue of liability.

Turning to the issue of damages and, in particular, the decedent's future loss of earnings, we agree with the appellants that the court improperly admitted testimony concerning the profitable financial earnings of a car dealership at the same location where the decedent had planned to open a car dealership business. This evidence was permitted to be adduced notwithstanding the fact that the decedent entered the hospital for the hernia operation prior to the commencement of the car dealership business, that his partner opened the business and lost money in 1981, 1982 and 1983, and that his

partner was succeeded by another person who ultimately attained financial success in 1985 and 1986. Also admitted in evidence was the substantial gross sales and profits of the car dealership. We find that this evidence was speculative and was too remote to be probative on the issue of future loss of earnings (see, *Wanamaker v Pietraszek,* 107 AD2d 1020; *Geary v Metropolitan St. Ry. Co.,* 73 App Div 441). The reduced award for wrongful death in the sum of $2,000,000 is excessive. Since it cannot be said that the erroneous admission of evidence of the profits earned by the car dealership did not contribute to the excessive award of damages for wrongful death, there must be a new trial on the issue of those damages (see, *Wanamaker v Pietraszek, supra; De Cicco v Methodist Hosp.,* 74 AD2d 593; *see also, Caprara v Chrysler Corp.,* 52 NY2d 114, 130-138).

With regard to the damages for wrongful death, the appellant's contention that the trial court erred in awarding interest on the entire principal sum pursuant to EPTL 5-4.3 without differentiating between prejudgment and postjudgment losses of future income was not raised in the trial court, and we decline to reach the merits of this issue at this juncture (see, *Harris v Armstrong,* 64 NY2d 700; *Nelson v Times Sq. Stores Corp.,* 110 AD2d 691, *appeal dismissed* 67 NY2d 645; *Collins v Weinberg,* 88 AD2d 1037).

Finally, with respect to the damage award for conscious pain and suffering, we conclude it was excessive to the extent indicated. In the event the plaintiff declines to stipulate to the reduced amount, there shall be a new trial on the issue of damages for wrongful death and conscious pain and suffering. Thompson, J. P., Spatt, Sullivan and Harwood, JJ., concur.