*530 OPINION OF THE COURT
Memorandum.
Judgment unanimously modified and new trial ordered on the issue of liability only and as so modified affirmed without costs. The jury determination as to damages is affirmed.
Order unanimously reversed without costs and motion for indemnification denied.
In this negligence action for personal injuries the complaint states that on April 15, 1985 the plaintiff slipped on debris on the exterior stairs of defendants’ premises suffering serious injury to her hand. The defendant City of New York leased the whole building from defendants Arenia et al. for the Department of Social Services.
The defendant City of New York was alleged to have had actual notice of broken glass on the stairs and is an issue to be considered by the jury at the new trial.
However, apart from the above-mentioned notice issue, the court committed reversible error by permitting the plaintiff’s expert over objection by the attorney for the city, to testify in regard to the requirements for handrails (cf., Nevins v Great Atl. & Pac. Tea Co., 164 AD2d 807). The city stated that these were legal conclusions for the court. In our view the plaintiff’s proof was insufficient to establish that handrails were required on these exterior stairs. Administrative Code of the City of New York former § C26-603.2, now § 27-366, entitled "Exits from floors” states that "1. There shall be at least two independent exits, remote from each other, from every floor of a building”. Administrative Code former § C26-604.8 (f) regarding interior stairs, now § 27-375 (f), entitled "Guards and handrails” states that "Stairs shall have walls, grilles, or guards * * * on both sides, except that stairs less than forty-four inches wide may have a handrail on one side only”. Administrative Code § C26-604.9, now § 27-376, entitled "Exterior stairs” states that "Exterior stairs may be used as exits in lieu of interior stairs provided they comply with all of the requirements for interior stairs, except enclosure”.
In its charge to the jury the court merely charged the law as to interior stairs even though this was an exterior stairway.
In the instant matter, there may be two other stairways satisfying the exit requirement of the Administrative Code. Therefore, this exterior stairway may not be an exit in lieu of interior stairs. Consequently, it would not have to comply with the requirements of interior stairs.
*531 The accident report filled out by Mr. Coleman, the Director of the Grant Square Senior Center, should not have been admitted into evidence. In Toll v State of New York (32 AD2d 47, 49-50) the court stated: "Subdivision (a) of CPLR 4518 permits a police report to be admitted as proof of the facts recorded therein if (1) the entrant of those facts was the witness, or (2) the person giving the entrant the information was under a business duty to relate the facts to the entrant (Johnson v. Lutz, supra). If neither of these two requisites is satisfied but the report recites a statement of an outsider, the record may be admitted (under Kelly v. Wasserman, supra), to prove that the statement recorded therein was made by the outsider (even though the main facts set forth in the business record are hearsay and excludable pursuant to Johnson) and, then, the facts recited in the statement may be proven by the business record if the statement qualifies as a hearsay exception, e.g., an admission, as in Kelly and Chemical Leaman. ”
In the case at bar, Mr. Coleman was not a witness to the accident, nor was he under a business duty to relate the facts to the city. Finally, the statement does not qualify as a hearsay exception, e.g., an admission.
The report was not much more than a statement of what Mr. Coleman observed. He testified and was cross-examined as to what he saw and as to what happened. The one statement made in the report that Mr. Coleman did not actually observe was that "There was broken glass on the steps which was left there by teenagers that hang out on the steps after the center closes”. We are aware the City of New York’s own employee testified that there was glass on the steps on Friday, April 12, three days before the accident, and there was no testimony that it was subsequently cleaned (see, Galanek v New York City Tr. Auth., 53 AD2d 586).
The amount of the verdict was not excessive. At the time of the accident, plaintiff was 25 years old with twin six-year-old children. As a result of the accident she has permanently lost the use of the three middle fingers of her dominant hand. The doctor testified that as a result of the accident the tendons leading to two of her fingers were severed and a tendon leading to another finger was damaged. There was nerve damage to all three fingers. The doctor testified that the middle finger is bent down towards the palm. The other two fingers are slightly less bent towards the palm. She has lost 80% use of gross strength which is utilized in carrying a bag. *532 She has also lost 80% of her ability to perform fine movements like typing. The scar in her hand is painful. She has some sensation in her fingers. It feels like when one’s foot falls asleep. She has both the pain and tingly sensation. The doctor who examined plaintiff on behalf of the city testified that her whole hand does not appear to function.
In view of the young age of the plaintiff and the seriousness of the injuries the monetary verdict should not be disturbed (see, Sternemann v Langs, 93 AD2d 819).
In our opinion the posttrial order granting landlord’s motion for indemnification from the City of New York should be reversed and the motion denied. Paragraph 10 of the lease between the parties provides that the tenant covenants and agrees: "To save the landlord harmless against all claims for all injuries resulting from Tenant’s negligence in connection with its occupancy of these premises”.
The defendant city contends that General Obligations Law § 5-321 makes the indemnification clause void and unenforceable and even if the court finds the clause enforceable the lease does not reflect "unmistakable intent” of the parties that the landlord be granted indemnification for its own negligence rather than merely contribution for the tenant’s proportionate share of liability. General Obligations Law § 5-321, entitled, "Agreements exempting lessors from liability for negligence void and unenforceable”, states as follows: "Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable.”
In our view the trial court correctly ruled that General Obligations Law § 5-321 did not make this clause unenforceable because it was directed primarily to exculpatory clauses in leases whereby lessors are excused from direct liability for otherwise valid claims which might be brought against them by their tenants. However, where, as here, sophisticated parties have negotiated at arm’s length to enter into a lease containing an indemnification clause, such clause is valid inasmuch as the parties have allocated the risk of liability to third parties between themselves (see, Hogeland v Sibley, *533 Lindsay & Curr Co., 42 NY2d 153; La Vack v National Shoes, 124 AD2d 352).
On the other hand, there is "no unmistakable intent of the parties” that once the city’s negligence was established, complete indemnity of Arenia et al. was triggered by the contractual provision. In order for a court to construe a contract as requiring a party to indemnify another party for the indemnitee’s own negligence, the court must find that it was the "unmistakable intent of the parties” to remove from the indemnitee all responsibility for its own negligent conduct (Hogeland v Sibley, Lindsay & Curr Co., supra; Margolin v New York Life Ins. Co., 32 NY2d 149).
In the case at bar, the indemnification clause provides only that the tenant would hold the landlord harmless against all claims for all injuries resulting from tenant’s negligence. It does not extend to negligent acts by the landlord.
While not directly relevant to General Obligations Law § 5-321, it is essential to an understanding of the rules regarding contractual indemnification to review cases involving a related section in the General Obligations Law. In the case of Brown v Two Exch. Plaza Partners (76 NY2d 172, 180) involving a building construction under General Obligations Law § 5-322.1 the court held in part that prior to the 1981 amendment it was against public policy to contract to indemnify the promisee against liability arising out of bodily injury to persons caused by or resulting from the sole negligence of the promisee. Nothing prevented indemnification in cases of joint fault. In 1981 the Legislature amended section 5-322.1 to prohibit indemnity agreements in which owners or contractors sought to pass along the risks from their own negligent actions to other contractors or subcontractors, even if the accident was caused only in part by the owner’s or contractor’s negligence. "Thus, the 1981 amendment eliminated the 'sole negligence’ language and substituted a prohibition on agreements to indemnify for injuries 'caused by * * * negligence of the promisee * * * whether such negligence be in whole or in part’ ” (Brown v Two Exch. Plaza Partners, supra, at 180; General Obligations Law § 5-322.1; see also, Magrath v Migliore Constr. Co., 139 AD2d 893).
The court in Brown v Two Exch. Plaza Partners (supra), without referring to it has implicitly overruled the determina *534 tian in Weinstock v Jenkin Contr. Co. (134 AD2d 254, lv denied 70 NY2d 616) involving General Obligations Law §5-322.1 which was relied upon by the trial court when it granted Arenia et al. ’s motion for indemnification.
Kassoff, P. J., Pizzuto and Santucci, JJ., concur.