# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**777**

**KA 11-02173**

PRESENT: SCUDDER, P.J., SMITH, FAHEY, LINDLEY, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                          MEMORANDUM AND ORDER

ISIDORO MARRA, DEFENDANT-APPELLANT.

---

GIRVIN & FERLAZZO, P.C., ALBANY (SALVATORE D. FERLAZZO OF COUNSEL), FOR DEFENDANT-APPELLANT.

JOHN H. CRANDALL, DISTRICT ATTORNEY, HERKIMER (JACQUELYN M. ASNOE OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Herkimer County Court (Patrick L. Kirk, J.), rendered May 5, 2011. The judgment convicted defendant, upon a jury verdict, of rape in the first degree.

It is hereby ORDERED that the judgment so appealed from is unanimously modified as a matter of discretion in the interest of justice by reducing the sentence to a determinate term of imprisonment of 10 years and a period of postrelease supervision of 5 years and as modified the judgment is affirmed.

Memorandum: On appeal from a judgment convicting him following a jury trial of rape in the first degree (Penal Law § 130.35 [2]), defendant contends that the verdict is against the weight of the evidence because the People failed to prove the element of penetration beyond a reasonable doubt. We reject that contention. The victim testified at trial that she had fallen asleep on a couch at an inn owned by defendant, after consuming multiple glasses of wine with her dinner. She further testified that, when she awoke, defendant was on top of her and his penis was inside her vagina. The victim's testimony was corroborated by the fact that defendant's DNA was found on the area between her vagina and anus. We also note that the victim was crying and hysterical when examined by medical personnel at the hospital shortly after the rape was reported to the police. When defendant was questioned by the police, he said that he had been drinking alcohol that night and did not "remember anything" about what happened with the victim. Defendant further stated that he had "no idea" how the events had transpired such that he was in the room where the victim was sleeping when the rape occurred. Toward the end of his police interview, defendant asked, "What if I can prove that [the victim] came on to me first," thus suggesting that intercourse may have taken place as the victim had alleged. Finally, based on the evidence at trial, we discern no motive for the victim to make a false

accusation against defendant, with whom she was acquainted and had no apparent grudges.

As defendant correctly notes, swabs taken from the victim's vagina at the hospital tested negative for defendant's sperm. The absence of defendant's sperm, however, is not necessarily inconsistent with the victim's claim of penetration because the victim testified that defendant did not ejaculate. More troubling is the absence of defendant's DNA on the swabs taken from the victim's vagina, inasmuch as a forensic scientist testified for the People at trial that it is "possible" for there to be a skin to skin transfer of DNA. Nevertheless, the forensic scientist did not testify that there is *always* a transfer of DNA from skin to skin contact, and no evidence to that effect was presented to the jury.

This case turned largely upon the credibility of the victim, and the jury evidently believed the victim's testimony that defendant inserted his penis into her vagina without her consent while she was asleep. We are cognizant of our duty to conduct an independent assessment of all of the proof as well as our authority to "substitute [our] own credibility determinations for those made by the jury in an appropriate case" (*People v Delamota*, 18 NY3d 107, 116-117). In our view, however, this is not an appropriate case in which to substitute our own credibility determinations, given that the victim's testimony was not riddled with inconsistencies or otherwise substantially impeached. "Sitting as the thirteenth juror . . . [and] weigh[ing] the evidence in light of the elements of the crime as charged to the other jurors" (*People v Danielson*, 9 NY3d 342, 349), we conclude that, although a different verdict would not have been unreasonable, it cannot be said that the jury failed to give the evidence the weight it should be accorded (*see People v Bleakley*, 69 NY2d 490, 495; *People v Kalen*, 68 AD3d 1666, 1666-1667, *lv denied* 14 NY3d 842).

Defendant further contends that County Court improperly admitted in evidence photographs of the victim taken at the hospital. According to defendant, the People failed to lay an adequate foundation for their admission because the victim was not asked how she sustained the marks and bruises depicted therein and there was no evidence that the injuries depicted were caused by defendant. Defendant further contends that the potential for prejudice arising from the photographs outweighed their probative value. We conclude that defendant failed to preserve his present contentions for our review, because they differ from those raised before the trial court (*see* CPL 470.05 [2]; *People v Major*, 251 AD2d 999, 1000, *lv denied* 92 NY2d 927; *People v Hobbs*, 178 AD2d 1017, *lv denied* 79 NY2d 1002). In his motion in limine, defendant sought to preclude the photographs on the ground that they were not timely turned over to the defense, and at trial he objected to the admission of the photographs generally and on the ground that there would be "no medical testimony indicating the length of time that those bruises were there from the time that they were initially inflicted."

In any event, we conclude that the People did lay a proper foundation for admission in evidence of the photographs. "Properly

authenticated photographs are admissible whenever relevant to describe the physical characteristics of a person, place, or thing" (Prince, Richardson on Evidence § 4-213, at 148-149 [Farrell 11th ed]). Photographs are properly authenticated when "a competent witness possessing knowledge of the matter" identifies the subject depicted therein and verifies that the photographs accurately represent the subject depicted (*People v Byrnes*, 33 NY2d 343, 347; *see generally People v Austin*, 13 AD3d 1196, 1197, *lv denied* 5 NY3d 785). Here, contrary to defendant's contention, the People laid a proper foundation for the admission of the photographs, inasmuch as the nurse who took them testified that the photographs accurately represented the portions of the victim's body depicted therein.

Although the People laid a proper foundation for the photographs, however, it does not necessarily follow that the court properly admitted them in evidence. The photographs must also be relevant, i.e., they must "tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered' " (*People v Wood*, 79 NY2d 958, 960, quoting *People v Pobliner*, 32 NY2d 356, 369, *rearg denied* 33 NY2d 657, *cert denied* 416 US 905), and we conclude that they were relevant. In addition, we conclude that their probative value outweighed their potential for prejudice (*see People v Acevedo*, 40 NY2d 701, 704-705). The nurse who took the photographs testified that some of the bruises and red marks depicted looked "fresh" while other injuries looked "older." The photographs of the "fresh" injuries were relevant to the issue of physical helplessness under the People's theory that, by undressing the victim and having sexual intercourse with her while she was sleeping, defendant caused bruising and red marks to the victim's body that would not normally result from consensual intercourse. Even assuming, arguendo, that the court erred in admitting photographs depicting "older" bruises that may have predated the rape, we conclude that any such error is harmless (*see People v Crimmins*, 36 NY2d 230, 240-241). The injuries in question were relatively minor in nature and thus not inflammatory, and, based on defense counsel's cross-examination of the nurse, the jury was well aware of the fact that the "older" bruises may have existed prior to the rape.

Defendant failed to preserve for our review his contention that he was denied a fair trial by prosecutorial misconduct during summation (*see People v Gonzalez*, 81 AD3d 1374, 1374; *People v Smith*, 32 AD3d 1291, 1292, *lv denied* 8 NY3d 849) and, in any event, we conclude that none of the prosecutor's comments was so egregious as to deny defendant a fair trial (*see People v Rivers*, 82 AD3d 1623, 1624, *lv denied* 17 NY3d 904; *People v Quinones*, 5 AD3d 1093, 1094, *lv denied* 3 NY3d 646). We reject defendant's further contention that he was denied effective assistance of counsel. The purported shortcomings of defense counsel did not demonstrate actual ineffectiveness and, viewing defense counsel's representation in totality and as of the time of the representation, we conclude that defendant received meaningful representation (*see generally People v Baldi*, 54 NY2d 137, 147).

        We agree with defendant, however, that, in light of his age, his lack of a prior criminal record and other mitigating circumstances, the sentence of a determinate term of incarceration of 18 years followed by 15 years of postrelease supervision is unduly harsh and severe.  As a matter of discretion in the interest of justice, we therefore modify the judgment by reducing the sentence to a determinate term of imprisonment of 10 years and a period of 5 years of postrelease supervision.

Entered:  June 15, 2012                          Frances E. Cafarell
                                                 Clerk of the Court