People v Smith (2019 NY Slip Op 05586)





People v Smith


2019 NY Slip Op 05586


Decided on July 11, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 11, 2019

108340

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
NIGEL SMITH, Also Known as BLACKA and LIFE, Appellant.

Calendar Date: May 28, 2019

Before: Egan Jr., J.P., Lynch, Clark, Devine and Pritzker, JJ.


John R. Trice, Elmira, for appellant.
Stephen K. Cornwell Jr., District Attorney, Binghamton (Stephen D. Ferri of counsel), for respondent.



MEMORANDUM AND ORDER
Clark, J.
Appeal from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered October 15, 2015, upon a verdict convicting defendant of the crimes of murder in the second degree, robbery in the first degree, robbery in the second degree, criminal trespass in the second degree and resisting arrest.
On June 15, 2013, an alleged drug dealer (hereinafter the victim) was found dead from asphyxiation and blunt force trauma. Based on allegations that defendant, along with Calvin Bell, attacked and robbed the victim several hours earlier, purportedly in retaliation for the victim having sexually assaulted and robbed Bell's female friend, defendant was charged in a six-count indictment with murder in the second degree, robbery in the first degree, robbery in the second degree (two counts), criminal trespass in the second degree and resisting arrest [FN1]. Following a jury trial, defendant was convicted of all charges except one count of robbery in the second degree. He was sentenced to a prison term of 25 years to life on the murder in the second degree conviction and lesser concurrent prison terms on the remaining convictions. Defendant appeals, and we affirm.
Defendant argues that his convictions for murder in the second degree, robbery in the first degree and robbery in the second degree are not supported by legally sufficient evidence and are against the weight of the evidence because the proof did not establish his identity as the perpetrator of those crimes or that the victim's death was caused by either him or Bell. In addressing a legal sufficiency argument, we view the evidence in the light most favorable to the People and will not disturb the verdict if there is "any valid line of reasoning and permissible [*2]inferences [that] could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial" (People v Williams, 84 NY2d 925, 926 [1994]; accord People v Hines, 97 NY2d 56, 62 [2001]). In a weight of the evidence review, we decide whether, based on all of the credible evidence, a different finding would have been unreasonable and, if not, we weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony (see People v Mateo, 2 NY3d 383, 410 [2004], cert denied 542 US 946 [2004]; People v Granger, 166 AD3d 1377, 1378 [2018]).
As relevant here, a conviction for murder in the second degree requires evidence that, "[a]cting either alone or with one or more other persons, [the defendant] commit[ted] or attempt[ed] to commit robbery . . ., and, in the course of and in furtherance of such crime or of immediate flight therefrom, he [or she], or another participant, if there be any, cause[d] the death of a person other than one of the participants" (Penal Law § 125.25 [3]). Additionally, "[a] person is guilty of robbery in the first degree when he [or she] forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he [or she] or another participant in the crime . . . [c]auses serious physical injury to any person who is not a participant in the crime" (Penal Law § 160.15 [1]). Further, "[a] person is guilty of robbery in the second degree when he [or she] forcibly steals property and when . . . [h]e [or she] is aided by another person actually present" (Penal Law § 160.10 [1]). Lastly, "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he [or she] solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (Penal Law § 20.00).
The trial evidence demonstrated that the victim was found dead in his apartment on the morning of June 15, 2013, around 11:20 a.m. According to a paramedic and a law enforcement agent who responded to the scene, the pockets on the victim's pants were turned inside out, a frying pan was lying next to him and the couch cushions were tossed off the couch. Evidence from the ensuing investigation, including testimony from a pathologist, established that the victim's death was ultimately ruled a homicide. The pathologist asserted that there were bruises on the victim's forehead, face and knees, a small laceration on his eyebrow and micro-hemorrhages on his back and armpit. Based upon his examination of the victim's body and the autopsy, the pathologist stated that the victim had suffered from chest compression and blunt force trauma to the head. He explained that the victim, who had a full stomach at the time of his death, had aspirated on food matter and opined that the cause of his death was asphyxiation due to chest compression. The pathologist estimated that the victim's death had occurred around 2:00 a.m., several hours before he was found.
Turning to the events that caused the victim's death, an eyewitness testified to being present at the victim's apartment during the attack. She stated that she heard scuffling in the victim's living room and, upon investigation, observed two male assailants, one of whom put a gun to her head and ultimately forced her onto the ground. She testified that one of the assailants was kneeling on the victim's back, demanding money and "dope," and the other assailant similarly questioned her as to the whereabouts of money and drugs. According to the eyewitness, she and the victim were "stomped" during the attack. She asserted that she was able to flee while the assailants searched the apartment, and she left the victim lying face down on the floor. Forensic evidence established that the eyewitness's DNA was on the victim's shirt and pants, as well as on a cigarette found at the scene.
In addition, Bell's female friend, in whom he was romantically interested, testified that the victim had been one of her drug dealers, that the victim had robbed and sexually assaulted her during a prior drug transaction and that Bell had become angry upon learning of the sexual assault. She stated that, several hours before the attack on the victim, she brought Bell to meet up with defendant and that, later, at Bell's behest, she arranged to buy heroin from the victim. She testified, however, that she did not carry out that arranged buy. She asserted that, instead, she drove Bell to the victim's neighborhood, where Bell ultimately got into defendant's car. According to the friend, she waited in the car and, upon seeing defendant's car 15 to 20 minutes [*3]later, she followed the car to a parking lot, where she observed either defendant or Bell throw a heavy bag into a dumpster. The friend testified that she later saw defendant and Bell counting money, that Bell gave her several bags of heroin that were packaged like bags she would receive from the victim and that, upon questioning Bell as to what had happened, Bell stated, "your Homey might not be with us anymore." The friend's account was corroborated in many respects by surveillance footage that was admitted into evidence, as well as cell phone records of Bell's location on the night in question. Further, the brother of defendant's friend testified to various inculpatory comments made by defendant, including that he and Bell had intended to rob and "beat" the victim in retaliation for the victim having sexually assaulted Bell's friend. According to the brother, defendant told him that the victim had resisted the robbery, causing him to place the victim in a chokehold and Bell to hit him with a frying pan.
Viewing the foregoing evidence in the light most favorable to the People, we find that there is a valid line of reasoning and permissible inferences from which a rational juror could have concluded that defendant and Bell, his accomplice, forcibly stole property from the victim and that, during the course of that robbery, he caused the victim's death (see People v Reed, 22 NY3d 530, 535-536 [2014]; People v Becoats, 17 NY3d 643, 654 [2011]; People v Haggray, 164 AD3d 1522, 1525 [2018], lv denied 32 NY3d 1111 [2018]; People v Elliot, 57 AD3d 1095, 1097 [2008], lv denied 12 NY3d 783 [2009]). As to the weight of the evidence, it would not have been unreasonable for the jury to have reached a different verdict, particularly given the many inconsistencies in the testimony given by the brother and Bell's friend (see People v Haggray, 164 AD3d at 1525). However, these credibility issues were fully explored during cross-examination and were ultimately resolved by the jury in favor of the People (see People v Malak, 117 AD3d 1170, 1174 [2014], lv denied 24 NY3d 1086 [2014]; People v Sheppard, 107 AD3d 1237, 1239 [2013], lv denied 22 NY3d 1203 [2014]). Thus, when we view the evidence in a neutral light and accord appropriate deference to the jury's credibility determinations, we find that defendant's convictions for murder in the second degree, robbery in the first degree and robbery in the second degree are supported by the weight of the evidence (see People v Haggray, 164 AD3d at 1525; People v Lalonde, 160 AD3d 1020, 1023 [2018], lv denied 31 NY3d 1118 [2018]; People v Reed, 97 AD3d 1142, 1144 [2012], affd 22 NY3d 530 [2014]).
Next, defendant asserts that County Court failed to adequately inform him of a potential conflict of interest arising from defense counsel's prior representation of, and alleged former relationship with, Bell's friend. However, our review of the record reveals that County Court thoroughly explained to defendant the nature of the conflicts and how they could potentially impact defendant's trial if Bell's friend were to testify, and that, despite having been made aware of the risks, defendant knowingly and voluntarily waived the potential conflicts (see People v Simpson, 146 AD3d 1175, 1177-1178 [2017], lvs denied 30 NY3d 980, 983 [2017]).
Further, we reject defendant's contention that he received ineffective assistance of counsel. Defendant's sole criticism of defense counsel — that he failed to object to certain hearsay testimony given by Bell's friend — is belied by the record. Indeed, over defendant's objections, County Court granted the People's pretrial motion to introduce the challenged hearsay testimony under the co-conspirator exception to the hearsay doctrine. The friend's trial testimony was consistent with the testimony contemplated by the People's motion and subsequently ruled upon by County Court prior to trial. Under these circumstances, defense counsel was "not required, in order to preserve a point, to repeat an argument that the court ha[d] definitively rejected" (People v Finch, 23 NY3d 408, 413 [2014]; compare People v Jackson, 29 NY3d 18, 23-24 [2017]). Moreover, our review of the record reveals that defense counsel's representation, viewed in totality, was meaningful (see People v Umana, 143 AD3d 1174, 1176 [2016], lv denied 29 NY3d 1037 [2017]; People v Wells, 101 AD3d 1250, 1255 [2012], lv denied 20 NY3d 1066 [2013]).
Lastly, defendant contends that his conviction for robbery in the second degree is an inclusory concurrent count of robbery in the first degree. "Concurrent counts are 'inclusory' when the offense charged in one is greater than any of those charged in the others and when the latter are all lesser offenses included within the greater" (CPL 300.30 [4]). A crime is a lesser included offense of a charge of a higher degree when it is impossible to commit the greater crime without [*4]concomitantly committing, by the same conduct, the lesser offense (see CPL 1.20 [37]; People v Acevedo, 40 NY2d 701, 706 [1976]). As charged here, robbery in the second degree requires an element not required by robbery in the first degree — namely, that defendant be "aided by another person actually present" (Penal Law § 160.10 [1]; see People v Acevedo, 40 NY2d at 706; People v Lebron, 305 AD2d 799, 801 [2003], lv denied 100 NY2d 583 [2003]). Thus, because it is possible to commit robbery in the first degree without also committing robbery in the second degree, defendant's convictions for robbery in the first degree and robbery in the second degree are permissible (see People v Acevedo, 40 NY2d at 706; People v Lebron, 305 AD2d at 801).
To the extent that we have not addressed any of defendant's contentions, they have been reviewed and found to be without merit.
Egan Jr., J.P., Lynch, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Although defendant and Bell were jointly charged, County Court granted defendant's motion to sever the indictment.