## VAUGHN v. NEAL.
### No. 613.

Municipal Court of Appeals for the District of Columbia.

July 1, 1948.

235

Margaret A. Haywood, of Washington, D. C., for appellant.

Jack Politz, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This was a suit for possession of a room in a rooming house, based on the charge that the tenant was disorderly in behavior, and was disorderly and was committing a nuisance by refusing to admit plaintiff for purposes of cleaning, papering and painting, and by refusing to furnish plaintiff a key to the room. There was a complete failure to prove disorderly behavior and so we are here concerned only with the latter charge.

Plaintiff operated a rooming house in which defendant had rented a furnished room. Just above the room there was an unoccupied attic to which access could be had only through defendant's room. In September 1947, plaintiff desired access to defendant's room for the purpose of painting and papering. Having no key to the room she gained entry by removing a side door. This resulted in a dispute between the parties, the details of which we need not narrate here. Plaintiff contended that her rooming house license was endangered by defendant's refusal to comply with the D. C. Rooming House Regulations, which require rooming house operators to have keys to all rooms. Defendant contended that hers was an apartment, that she was not required to furnish a key to plaintiff but was willing to do so on certain terms stipulated by her. The jury returned a verdict awarding possession to plaintiff. On defendant's motion the trial judge set aside the verdict and ordered judgment for defendant, notwithstanding the verdict.

In judging the correctness of the decision we must apply the same tests as are employed as to a motion for directed verdict.[1] Neither of such motions can properly be granted unless, viewing the evidence and all inferences reasonably deducible therefrom in a light most favorable

---

[1] McSweeney v. Wilson, D.C.Mun.App., 48 A.2d 469.

to the opponent of the motion, only one result can be reached.[2] By this test we must rule there was error in granting the judgment n.o.v.

Among the facts the evidence for plaintiff tended to establish were these: that defendant occupied a single furnished room and an alcove for cooking; that plaintiff originally installed a lock on defendant's door, retaining a key thereto, but that defendant had later put another lock on the door, to which lock she had persistently refused to give plaintiff a key; that plaintiff had in previous years several times encountered difficulty in getting approval of her rooming house license because District Government inspectors could not get into defendant's room; that access to the attic could only be gained through defendant's room; that defendant had said she would never give plaintiff a key to the room and would not cooperate in giving her access to the room for purposes of repair. It is true that much of this evidence was contradicted or explained by defendant. But the weight to be given such contradictions and explanations was a matter for the jury. The trial judge could not properly override the jury's decision thereon.

It is plain that the basic issue concerned the refusal of defendant to give plaintiff a key. The jury having found (as apparently they did) that there was such a refusal and the trial judge being without power to disturb that finding the next question is whether such refusal constituted grounds for a suit for possession.

In this connection the D. C. Rooming House regulations are significant, though perhaps not controlling. Such regulations give the Health Officer power of inspection of all rooming houses and require that the entrance door to each room shall be provided with a lock, a key thereto furnished to the roomer and a duplicate key furnished to the proprietor "who shall have access to all rooms at all reasonable hours." It is important to note that the regulations also require operators of rooming houses to keep them in repair. Without the right of inspection the operator could not know what

repairs were necessary and without the right of entry could not make such repairs.

The regulations also define sleeping accommodations in a rooming house as those which "do not form a separate household unit or units with bath and kitchen exclusively for the use of the persons * * * occupying such unit or units." This last provision is inconsistent with defendant's contention that hers was a self-contained apartment unit, for she had no private bath and no kitchen as such. She had only a sleeping room with an alcove used for cooking. We do not say that there can never be a conventional tenancy, in an apartment or otherwise, within a building operated principally as a rooming house. Indeed we have inferentially recognized that such a mixed situation may exist. See District of Columbia v. Basiliko, D.C.Mun. App. 44 A.2d 407, where we held that the fact that a building is licensed as an apartment house would not preclude a prosecution for a violation of a rooming house regulation. In other words it is not the label which determines the status and obligations of the parties but the actualities of the situation.

We have also held that in determining whether a person is a roomer or a tenant the criterion is the right of exclusive possession.[3] Here such criterion was not established by evidence of an express agreement. It could perhaps have been established from the conduct of the parties or by inferences to be drawn from certain features of the evidence. Such inferences would necessarily be as conflicting as the evidence itself, and would therefore be for the jury under proper instructions. The trial judge would have had no right to decide them as matters of law.

Another question remains. Assuming there was a duty on the part of defendant to furnish plaintiff a key and assuming that such duty was violated, does that constitute "disorderly conduct" or a "nuisance" so as to entitle plaintiff to possession? We think it does. Perhaps in her complaint for possession plaintiff used

---

[2] Nickel v. Scott, D.C.Mun.App., 59 A. 2d 206.

[3] Tamamian v. Gabbard, D.C.Mun.App., 55 A.2d 513; Washington Realty Co. v.

Harding, D.C.Mun.App., 45 A.2d 785; Beall v. Everson, D.C.Mun.App., 34 A.2d 41.

stronger language than was necessary. Probably it would have been sufficient if she had charged in the language of the Rent Act that defendant was "violating an obligation of [her] tenancy" by refusing to surrender a duplicate key of her room. But we do not think the choice of the stronger language put defendant at a disadvantage or prejudiced her in any way. She was reasonably and accurately informed of the charge she was required to answer. Moreover it may be said with complete reasonableness that under these circumstances refusal to furnish the key caused "injury, damage, hurt, inconvenience, annoyance, or discomfort" to the plaintiff in the legitimate enjoyment of her reasonable rights of person or property[4] and therefore constituted a nuisance.

It follows from all that we have said that the verdict of the jury should have been permitted to stand.

Reversed, with instructions to overrule defendant's motion for judgment, and to reinstate the verdict of the jury and enter judgment thereon.

---

[4] District of Columbia v. Totten, 55 App.D.C. 312, 5 F.2d 374, 40 A.L.R. 1461;

Levy v. Bryce, D.C.Mun.App., 46 A.2d 765.