Barbara McKNIGHT, Appellant,

v.

WIRE PROPERTIES, INC. and Stuart
E. Proctor, Appellees.

No. 6000.

District of Columbia Court of Appeals.

Argued Feb. 8, 1972.

Decided March 15, 1972.

Joel M. Finkelstein, Washington, D. C.,
for appellant.

Patrick J. Attridge, Washington, D. C.,
for appellees.

Before KELLY, FICKLING and
YEAGLEY, Associate Judges.

FICKLING, Associate Judge:

Appellant appeals from an order of the
trial court granting appellees' motion for
judgment notwithstanding the verdict.[1]
We affirm.

1. Super.Ct.Civ.R. 50(b).

At about 9 p. m. on April 9, 1969, appellant tripped and fell down a flight of stairs located in the apartment building where she lived. Appellant testified that she left her apartment, located on the second floor of the premises, and began to descend the stairs to the first floor. She stepped off the landing with her right foot on the first step, then brought her left foot down to the second step, when "something caught my shoe heels, both of them, and pitched me forward down the steps." After her fall appellant observed that both shoes were caught in the grooves on the tread of the second step. The shoes were described as "walking heels" as opposed to "spike heels." The vertical portion of the step, the riser, is 6½ inches high; the horizontal portion, the tread, is 10½ inches wide. The front 3½ inch portion of the step contains three corrugations or grooves, each in the shape of a hemisphere ⅜ of an inch wide at the top and 3/16 of an inch deep. The steps are concrete with the metal grooves embedded flush with the horizontal surface.

Appellant further testified that the stairs were illuminated by a 40-watt bulb on the ceiling above the second floor landing— nine feet above the landing, and another 40-watt bulb on the ceiling of the first floor landing. She also stated that she had lived in the building for over six months and had ascended and descended the same stairs at least once a day during that period without difficulty.

The Superintendent of Maintenance testified for the owner that there were 25 buildings in the 101-building apartment complex with stairways identical to the ones on which appellant fell, and that he had no knowledge of anyone's ever having fallen on the steps on which appellant fell or on similarly constructed steps in the other buildings.

An employee of the District of Columbia government testified that a 1962 survey of the building revealed that there were no deficiencies in the stairs in terms of Building Code requirements.

The jury returned a verdict in favor of the appellant in the sum of $5,000. This verdict was set aside by the trial judge on appellees' motion for judgment n. o. v.

Appellant contends that the trial court erred in granting appellees' motion because "a corrugation on the tread of a step which is shaped in such a fashion that it can catch and hold the heel of a woman's walking shoe raises a question of negligence for the jury to determine." [2]

Judgment n. o. v. should be awarded only when, viewing the evidence and all reasonable inferences in the light most favorable to the party who secured the jury verdict, no juror could reasonably reach a verdict for the opponent of the motion. District of Columbia v. Jones, D.C.App., 265 A.2d 594, 595 (1970); Vaughn v. Neal, D.C.Mun.App., 60 A.2d 234, 235–236 (1948); 5A J. Moore Federal Practice § 50.07 [2] (1971).[3]

After a careful review of the record, we are convinced that the trial court was correct in granting the motion for judgment n. o. v. There is no evidence that the step upon which appellant fell was negligently constructed or maintained. The fact that appellant stated that *something* caught her heel on the step and that, after falling, she saw her shoes with the heels in the grooves on the step where she fell is not evidence of defective construction or design of the steps. *Cf.* Turner v. Chicago Housing Authority, 11 Ill.App.2d 160, 136 N.E.2d 543 (1956); 1 L. Fromer & M. Friedman, Products Liability § 7.01 [4] (1971). Nor is this proof that the grooves caused her to fall. Viewing the evidence in the light most favorable to appellant, no juror could *reasonably* reach a verdict in her behalf.

Appellant also contends that the trial court improperly excluded her testimony

2. Brief for Appellant at 14.

3. Super.Ct.Civ.R. 50(b) is identical to Fed. R.Civ.P. 50(b).

regarding the lighting conditions on the stairs where she fell. During the trial the following exchange occurred:

Q. Mrs. McKnight, how would you describe the lighting conditions at the time you fell?

MR. ATTRIDGE [Counsel for Appellees]: I would object to that. I think that calls for a conclusion or opinion.

THE COURT: I will sustain the objection.

Q. As compared to the lighting conditions in this courtroom, how were the lighting conditions at the time you fell?

MR. ATTRIDGE: I object to that, Your Honor.

THE COURT: I will sustain the objection. You are getting into the field of opinion now, Mr. Finkelstein [Counsel for Appellant]. I realize it is a fine dividing line between fact and opinion on this particular thing, but *there are other ways you can get at it.* This is entirely too subjective. I will sustain the objection (Emphasis added.)

■ We think that the court did not preclude further examination on this point, which was a proper area for lay opinion. Fennell v. Illinois Ceneral R. R., 383 S.W. 2d 301, 303–305 (St. Louis Ct.App.1964); Marr v. Olson, 241 Iowa 203, 40 N.W.2d 475, 479 (1950); Gillespie v. Terminal R. R. Ass'n, 204 S.W.2d 598, 604 (St. Louis Ct.App.1947); Winters v. Hassenbusch, 89 S.W.2d 546, 550 (Kansas City Ct.App. 1936); 7 J. Wigmore, Evidence § 1924 (3d ed. 1940). Rather, the court sustained objections to the questions as they were phrased and, in fact, suggested that there were other ways to obtain the evidence appellant's counsel was seeking.

■ The only other argument advanced by appellant is that the lighting experiment testimony offered by the accident investigator was improperly excluded. This argument is without merit. Appellant admits that the measurements were taken with a different light meter at a different time of day (daylight rather than darkness). Courts have consistently required that such evidence be as nearly identical as possible to the conditions of the litigated happening in order not to mislead the jury. C. McCormick, Evidence § 169 at 360 (1954), and cases cited therein.

Affirmed.