Cecil S. HILL, Appellant,

v.

UNITED STATES, Appellee.

Reginald N. NESBY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 9563, 9573.

District of Columbia Court of Appeals.

Argued June 23, 1976.

Decided Dec. 10, 1976.

Rehearing Denied Jan. 7, 1977.

D. S. Sastri, Washington, D.C., appointed by the court, for appellant Hill.

David J. Ontell, appointed by the court, Washington, D. C., for appellant Nesby.

Douglas J. Behr, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, William D. Pease and Charles E. Wagner, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

KELLY, Associate Judge:

In this appeal from convictions by a jury of armed robbery, robbery and assault with a dangerous weapon in violation of D.C. Code 1973, §§ 22–2901, –3202 and –502, appellants allege that the trial court erroneously (1) failed to declare a mistrial after the prosecutor allegedly made improper and prejudicial remarks to the jury concerning the health of the complaining witness and the circumstances surrounding appellant Nesby's identification and arrest; (2) failed to suppress the identification of appellant Nesby as the second assailant made simultaneously by the complaining witness and another witness in the hallway of the courthouse pending the initial trial of appellant Hill; (3) failed to suppress the identification of appellant Hill where there was some question whether the photographic array produced at trial was the same as the one originally shown to the witnesses; and (4) required appellant Hill, over objection, to stand beside appellant Nesby before the jury to compare their relative heights and builds. We find these contentions without merit and affirm the convictions.

The government's evidence was that on July 19, 1974, at about 7:10 p. m., while it was still daylight, Mr. and Mrs. John Hussey, Jr. were approaching the second of two flights of stairs to the entry of their home at 3451 17th Street, N.W., in this city, when they were accosted by two young men. One of the men, appellant Hill, had a pistol. Hill shoved Mr. Hussey to the ground and took his keys and wallet. After assisting Hill, the other youth, appellant Nesby, punched Mrs. Hussey in the nose and wrested her purse from her. After the encounter, which lasted only a few minutes, the two youths fled the scene on foot. A witness, Miss Joyce McFarland, aged fifteen, was playing cards on her porch at 3426 17th Street, N.W., when the Husseys walked by. She saw two young men following the Husseys to their home. She said she recognized appellant Hill from Alice Deal Junior High School, and had noticed appellant Nesby because he had turned and waved to her. Miss McFarland did not witness the actual robbery, but she did see the two youths in flight.

Hill was arrested on July 23, 1974, on the basis of Miss McFarland's identification of him from a school yearbook picture and subsequent identification by her and by Mrs. Hussey from a police photographic array. Both witnesses identified Hill at a lineup shortly thereafter.

On January 21, 1975, when Hill's case was set for trial, appellant Nesby was arrested after he was identified by Miss McFarland and Mrs. Hussey.[1] This identification was made in the corridor of the courthouse. Following Nesby's arrest, appellants were joined as codefendants. Later, on February 21, 1975, before the jury was sworn, a motion to suppress identification was heard by the trial court and denied. Trial commenced on Monday, February 24, 1975. The jury was unable to reach a verdict after deliberating all day on February 27. The next day they were given the *Winters* charge.[2] The jury reached a verdict of guilty on the principal charges of armed robbery of Mr. Hussey and robbery of Mrs. Hussey. On May 6,

---

1. Mr. Hussey subsequently withdrew the identification of Mr. Nesby that he had made at that same time.

2. *Winters v. United States*, D.C.App., 317 A.2d 530 (1974) (en banc).

1975, the appellants were given concurrent sentences under 18 U.S.C. § 5010(c) (1970), of fifteen years on each count.

## I.

■ Appellants' first assignment of error is the alleged misconduct by the prosecutor in his opening remarks to the jury, specifically, the statement that

They grabbed Mr. Hussey from behind, and you will hear that Mr. Hussey is a victim of multiple schlerosis [sic]. They pulled him to the ground. They put a gun to his head.

It is contended that there should have been an immediate declaration of a mistrial since Mr. Hussey's disease was not only irrelevant and immaterial, but also highly prejudicial in that it was likely to arouse undue sympathy for the victim. The trial judge was initially disturbed by the remark and asked the prosecutor if he intended to prove that Mr. Hussey was indeed suffering from multiple sclerosis. The prosecutor said that he did not and, after a short hearing, the trial judge declined to declare a mistrial. He did, however, several times offer to instruct the jury members that any sympathy they had for the victim because of his disability should not in any way enter into or affect their deliberations, seeking in the process the advice of counsel on ways to mitigate the impact of the prosecutor's statement. Nevertheless, as a tactical matter to avoid highlighting the illness, defense counsel requested that no instruction be given. This single reference in the government's opening statement to Mr. Hussey's illness is now alleged to be so highly prejudicial as to necessitate a new trial.

■ While it is true that the prosecution should never attempt to put the jury in the place of the victim of crime, *Clarke v. United States*, D.C.App., 256 A.2d 782, 787 (1969), or to arouse its undue passion or sympathy during argument, the opening

remarks in this case, when viewed in their context with the extensive testimony at trial, were not so prejudicial as to necessitate a mistrial or a reversal on appeal. Mr. Hussey's disease was mentioned only once, in passing, during the prosecutor's brief description of the robbery. The brevity and casualness of this reference to the victim's physical condition in a trial not otherwise prejudicial to the accused indicates that there is no appreciable likelihood that the jury was misled or influenced to the prejudice of the appellants. *See United States v. Prieto*, 505 F.2d 8, 12 (5th Cir. 1974); *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). As we pointed out in *Smith v. United States*, D.C.App., 315 A.2d 163, 167, *cert. denied sub nom., Jeffries v. United States*, 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974), quoting from *Hall v. United States*, 84 U.S.App.D.C. 209, 212, 171 F.2d 347, 350 (1948):

The jury . . . "must be credited with enough common sense and discrimination to enable them to evaluate properly conduct and remarks of counsel even when they offend ordinary standards of propriety." . . .

■ In our review of the trial judge's ruling, the applicable test for prejudice is:

[W]hether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error. [*Smith v. United States, supra* at 166, quoting from *Gaither v. United States*, 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969); citations omitted.]

In this case, disclosure of Mr. Hussey's multiple sclerosis was not error since the jury was entitled to be informed of a plausible explanation for Mr. Hussey's labored

speech and manner during his testimony. Moreover, the statement was not emphasized when made. The physical condition of the complaining witness was not a central issue, nor could it affect proof beyond a reasonable doubt of the commission of the robbery by the two appellants. Therefore, under the *Gaither* test, there is no reason to believe that the judgment of the jury was substantially swayed by the information about Mr. Hussey's physical condition. Furthermore, appellants should not now be heard to complain that the trial court failed to take steps to mitigate any damage stemming from the prosecutor's statement when they themselves made the tactical decision to have the judge refrain from giving a proposed cautionary instruction to the jury.

■ Appellants also object to the prosecutor's statement that appellant Nesby had been present in the hallway of the courthouse on the day of Hill's trial for the purpose of being available to the defense as an alibi witness.[3] Nesby was arrested at that time based upon identification of him as the second assailant by the witness Joyce McFarland and, immediately thereafter, by Mrs. Hussey when they saw him in the hallway. Upon objection, the prosecutor proffered that he would produce the Assistant United States Attorney who had been told by Nesby at the time of the arrest that he was in court to testify for Hill. Instead, during the course of the trial Detective Love of the Metropolitan Police testified that he heard Nesby admit these facts to the Assistant United States Attorney. Appellants argue that the admission of this evidence in opening statement was plain error requiring reversal since it irreversibly tied Nesby and Hill together on the evening of the robbery in the jury members' minds.

There is no question that Nesby's admission of his purpose in being at the courthouse is admissible as relevant and probative to show that the codefendants Hill and Nesby knew each other, and that Hill had contemplated using an alibi that put them together for at least part of the evening in question. The admission came in as substantive evidence and the jury was free to consider it as such. There was nothing false or misleading about the prosecutor's statement disclosing the circumstances of Nesby's arrest, nor was appellant prejudiced because this remark was made in opening argument since testimony presented during trial supported the content of the opening statement. *See Gaither v. United States, supra* at 172, 413 F.2d 1072.

■ Nesby argues that he was preempted in his decision whether to take the stand in his own defense by this revelation to the jury of his admission.[4] However, there is no derogation of his Fifth Amendment privilege simply because defense counsel felt it necessary to put his client on the stand to rebut the government's perfectly sound use of admissible evidence.

## II.

As to appellants' contention that their respective identifications should have been suppressed, the record shows that Nesby was subpoenaed as an alibi witness at the original Hill trial on January 21, 1975. Nesby walked with Hill's younger brother up and down the hallway outside the courtroom. Joyce McFarland was seated there to the left of her father; in a row to her father's right were Mrs. Hussey, Mr. Hussey, and Detective Love. Miss McFarland whispered to her father that Nesby looked like the other assailant when he first walked by. Shortly thereafter, Mrs. Hus-

---

3. The Assistant United States Attorney stated:

 You will hear further, ladies and gentlemen, that on January 21st this case was called for trial in this very courtroom; and

on that day this individual [Mr. Nesby] came to court to testify on behalf of that individual there, Mr. Hill.

4. Appellant Hill chose not to take the stand.

sey remarked that Nesby was the one who had punched her in the nose. Mr. McFarland informed Detective Love of these identifications and Love relayed this information to the Assistant United States Attorney. Nesby was arrested shortly thereafter.

 Mrs. Hussey testified at the hearing on the motion to suppress and at trial that she made an independent identification of Nesby. The circumstances were such, however, that the jury might have found that she overheard or sensed from Miss McFarland's facial expression and conduct that Miss McFarland recognized Nesby and let it color her own impression of him. Nevertheless, whether or not Mrs. Hussey made a truly independent identification was factually a matter of credibility which was reasonably reserved to the jury by the trial judge. Suppression of identification testimony on the basis of suggestivity is proper only as a tool to curtail improper police procedure. A spontaneous and mutual recognition by two witnesses of a third party in a setting not precipitated or arranged by law enforcement officers may not be attacked under either the Fifth or Sixth Amendments.[5]

 With respect to the failure to suppress the photographic identification of appellant Hill by Miss McFarland and Mrs. Hussey, the fact that the photographs were temporarily misplaced by the police officer is not in and of itself sufficient cause for suppression, especially when the police officer is willing to vouch that the array was the one shown to the witnesses, testifies that he found the pictures in the desk drawer in which he had originally placed them and states that they were still bound together with a paper clip as he had left them. *See Swann v. United States,* D.C. App., 326 A.2d 813 (1974).

 Miss McFarland at one point testified that she thought the original array consisted of men older than those in the array produced at trial. She later amended her testimony, stating that she could not recall anything about the earlier array other than that she recognized the picture of Hill as being the same. Mrs. Hussey testified likewise. The totality of the circumstances in this case does not give rise to a substantial likelihood of irreparable misidentification from the photographs. *See Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The soundness of the identification is buttressed by the fact that Miss McFarland originally selected Hill's photograph from an Alice Deal Junior High School yearbook before seeing the photographic array arranged by the police officer. Mrs. Hussey selected Hill's photograph from the array without benefit of having seen or heard about the yearbook picture. There were no improper words or conduct on the part of the officer. In these circumstances there was no error in denying appellants' motion to suppress the identification.

### III.

 Finally, appellants argue that it was unfair, prejudicial and a violation of due process to have them stand side by side before the jury in order to illustrate their relative heights, weights, and builds. Hill, particularly, claims that his Fifth Amendment privilege against self-incrimination was violated since he had chosen not to take the stand in his own defense.

At the trial, the prosecutor requested that the codefendants stand beside one another in order to rebut Nesby's statement on direct examination that he was of approximately the same height as Hill. Earlier testimony from government witnesses indicated that Nesby was taller than Hill, a fact which was substantiated by standing the two next to one another before the jury. This was a form of contradiction of Nesby's characterization of their relative

---

5. The spontaneity of sudden confrontations helps to assure the reliability of the identification. *See, e. g., Bowler v. United States,* D.C.App., 322 A.2d 281 (1974).

heights which bore on the issue of identity of the robbers.

The United States Supreme Court, in the case of *Schmerber v. California,* 384 U.S. 757, 763, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966), makes it clear that the rule in *Holt v. United States,* 218 U.S. 245, 252–53, 31 S.Ct. 2, 54 L.Ed. 1021 (1910),[6] remains in force, *viz:*

> The prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. . . .

The Court noted that

> Both federal and state courts have usually held that it [Fifth Amendment privilege] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. [*Schmerber v. California, supra,* 384 U. S. at 764, 86 S.Ct. at 1832.]

Cases since *Schmerber* have repeatedly upheld the principle that a man is not protected by constitutional privilege from being compelled to stand up, sit down, walk, speak or submit to photography or fingerprinting so long as these disclose nothing about his knowledge. *Lewis v. United States,* 127 U.S.App.D.C. 269, 382 F.2d 817, *cert. denied,* 389 U.S. 962, 88 S. Ct. 350, 19 L.Ed.2d 377 (1967).[7] *See also Smith v. United States,* 88 U.S.App.D.C. 80, 187 F.2d 192 (1950), *cert. denied,* 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358 (1951); *Kennedy v. United States,* 122 U. S.App.D.C. 291, 353 F.2d 462 (1965);

*McFarland v. United States,* 80 U.S.App. D.C. 196, 150 F.2d 593 (1945).

Neither the Fifth Amendment privilege against self-incrimination nor due process standards prevents the standing of codefendants side by side before a jury to assess their relative physical appearances. It is of no consequence that appellant Hill had declined to take the stand to testify on his own behalf since such a physical display clearly does not constitute "testimony."

The judgments of conviction on appeal are

*Affirmed.*

---

6. Taking a blood sample from an intoxicated driver in *Schmerber* and requiring an accused to model a blouse in *Holt* are not violations of the Fifth Amendment privilege.

7. Handwriting exemplar taken from the accused did not violate the privilege. *Cf. United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973).