Maurice D. TAYLOR, Appellant,

v.

UNITED STATES, Appellee,

Isiah LAWRENCE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 90–387, 90–478.

District of Columbia Court of Appeals.

Argued June 19, 1991.

Decided Dec. 20, 1991.

Sandra G. Roland, Public Defender Service, with whom James Klein, Public Defender Service, Washington, D.C., was on the brief, for appellant Taylor.

Calvin Steinmetz, Washington, D.C., appointed by the court, for appellant Lawrence.

David L. Smith, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Heidi Pasichow, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FARRELL and WAGNER, Associate Judges, and GALLAGHER, Senior Judge.

FARRELL, Associate Judge:

Appellants Taylor and Lawrence appeal from their convictions for armed robbery. Lawrence, who was tried and convicted on a theory of aiding and abetting, challenges the sufficiency of the evidence linking him to the acts of the principal offenders. Taylor, tried jointly with Lawrence and a third codefendant who was acquitted, argues that the trial judge erroneously denied his motions for severance on the ground of conflicting defenses, and also contends the judge abused his discretion in rejecting Taylor's request to submit a voice exemplar without taking the stand and being subjected to cross examination.

We reject Lawrence's attack on the sufficiency of the evidence. As to Taylor, we conclude that his motions for severance were properly denied, but that the judge's ruling on the voice demonstration issue was influenced by an erroneous conception that it was inadmissible, because testimonial, unless Taylor submitted to cross-examination. We do not reverse outright, however, but instead remand for a proper exercise of the discretion the judge possessed in regard to admission of the voice exemplar.

I.

The events in issue were set in motion in the early evening of July 11, 1989, when Officer Dean Welch of the Metropolitan Police went to the Barry Farms section of Southeast Washington to attempt to buy three ounces of liquid PCP. Welch, supported by backup officers, was driving an unmarked vehicle equipped with a recording device, and had $750 in pre-marked bills in his pockets. According to the government's evidence, when Welch arrived at the Barry Farms location he encountered a group of two men and a woman. One of the men, appellant Lawrence, approached Welch's car and Welch explained his interest in buying PCP, asking for "Derrick," a drug dealer who frequented the area (and who Welch knew was in jail at that time). Lawrence answered that he could help obtain the drug, then got into Welch's car and directed him to a parking lot a few blocks away. There he signaled to another man who was wearing black shorts and a white T-shirt with an approximately six-inch black band around the middle. This man, whom Welch identified in court as appellant Taylor, asked Lawrence if Welch wanted PCP. When Lawrence replied that Welch wanted three "bottles" (the street term for ounces), Taylor ran off apparently to procure the drug.

Lawrence then got out of Welch's car and stood near a dumpster behind the car with two other men. One of these men,

codefendant Shorter,[1] approached the driver's side of the car and offered to sell Welch drugs. When Welch said Lawrence was already helping him obtain the "water" (street vernacular for PCP), Shorter replied that he knew Lawrence. Shorter moved away but twice returned to the car, both times attempting to sell Welch PCP. On the last try he brought a one-ounce bottle of PCP with him. As Shorter tried to persuade Welch to buy the bottle, Taylor reappeared on the scene, running toward the car as if holding something near his abdomen. Welch believed he was concealing the three ounces of PCP Welch had requested. Taylor got into the front passenger seat while Lawrence stayed outside the car near the dumpster and Shorter stood near the driver's window.[2] When Taylor sought to persuade Welch to buy Shorter's ounce of PCP, Welch grew fearful and told Taylor to leave the car if he was not going to sell the three ounces Welch wanted. Taylor suddenly took out a .38–caliber revolver, pointed it at Welch, and directed him to hand over all his money. Welch first relinquished $100, then an additional $550; after searching him for additional money and finding none,[3] Taylor got out of the car and told Welch to drive away. Welch had recorded the conversation.

Welch left the parking lot and Taylor, Lawrence, Shorter, and a fourth unidentified person ran uphill together toward the apartments behind the parking lot. Welch radioed "lookout" descriptions, including one of Taylor as wearing black shorts and a white shirt with a black band around the middle. Lawrence and Shorter were stopped some twenty minutes after the robbery and immediately identified by Welch.[4] Lawrence was still wearing the clothing Welch had described, and a $20 bill found in Lawrence's pocket was one of the marked bills taken from Welch.

Shown an array of photographs later that evening, Welch positively identified Taylor as the man who had robbed him. Shortly after making the identification, Welch returned to the crime area and saw Taylor there, identifying him again even though Taylor was now wearing a white T-shirt, a towel around his neck, and what appeared to be light-colored khaki pants. Taylor eluded Welch, but an updated description of his clothing was broadcast and he was picked up around midnight wearing stone-washed jeans that closely resembled khaki pants in cut and color. Welch identified Taylor as the robber at the scene of the stop, and once more in court. He also identified Taylor's voice as the voice of the assailant on the contemporaneous recording.

## II.

We first consider Lawrence's claim that the evidence sufficed only to show that he arranged an aborted drug transaction, not that he took part in the robbery of Welch. Of course, to withstand a motion for judgment of acquittal the evidence need only *permit* a reasonable jury to find guilt beyond a reasonable doubt; it need not compel such a determination. *Curry v. United States*, 520 A.2d 255, 263 (D.C.1967) (citing *Crawford v. United States*, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967)). Nor must the government refute "every possible inference of innocence." *Driver v. United States*, 521 A.2d 254, 259 (D.C.1987). Lawrence was found guilty on a theory of aiding and abetting; to support his conviction the government

---

1. Shorter was ultimately acquitted by the jury.

2. By this time, backup Officers Prather and Smith had located Welch—they had lost track of him briefly when he stopped to make his initial contact with Lawrence—and they observed the events in the parking lot from a distance far enough away to avoid detection. Prather saw a man dressed in black shorts and a white T-shirt with a blue band around the middle of the shirt enter what seemed to be the back of Welch's car.

3. The rest of the marked money was in Welch's rear pocket and escaped discovery.

4. Before they were stopped, three other persons wearing clothing similar to that of the persons described by Welch were detained. When Welch saw them, he immediately stated that the three had not been involved in the robbery.

had to adduce evidence permitting reasonable jurors to find that he was "involved in the criminal activity to the extent that he in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed." *Wesley v. United States*, 547 A.2d 1022, 1026 (D.C.1988) (citations and internal quotation marks omitted).

Viewing the evidence in the light most favorable to the government, we hold that the jury could fairly conclude that Lawrence knew of Taylor's design to rob Welch and facilitated it by his presence. *See Hordge v. United States*, 545 A.2d 1249, 1254 (D.C.1988) (presence that "facilitates the unlawful deed" sufficient to show aiding and abetting). First, Lawrence does not dispute that he was working with Taylor to sell drugs. From that starting point, the evidence supports reasonable inferences that Lawrence and Taylor knew it was likely Welch was carrying enough money to buy the amount of PCP Welch told Lawrence he wanted,[5] and that Lawrence and Taylor tacitly agreed to rob Welch when Taylor, summoned to Welch's car by Lawrence, discussed with Lawrence the number of "bottles" of PCP Welch wanted to buy. Moreover, after Lawrence got out of the car, he stood behind it near the dumpster where he could see the street entrance of the parking lot as well as into the car, and remained there throughout the robbery, inferentially in the role of a lookout. Lawrence then fled with Taylor and the others toward the same apartment buildings. *See In re Q.L.J.*, 458 A.2d 30, 32 (D.C.1982) (flight can imply guilty participation when it "accompanied conduct that facilitated an unlawful act"). Finally, Lawrence had $20 of the stolen money in his possession when arrested twenty minutes after the crime. Taken in their entirety, these circumstances allowed the jury reasonably to find that his participation was not limited to setting up a drug transaction that did not materialize, but included knowing and sup-portive involvement in the armed robbery. *See Creek v. United States*, 324 A.2d 688, 689–90 (D.C.1974).

### III.

■ We next consider Taylor's contention that the trial court abused its discretion in denying his motions to sever defendants. The argument rests on Taylor's assertion that his defense that Officer Welch misidentified him—because he was not even present when Welch was robbed—could not be reconciled with codefendant Shorter's defense that Shorter was on the scene "innocently," *i.e.*, merely to sell drugs, and that it was Taylor, whom Shorter placed at the scene, who robbed Welch.[6] Taylor contends that he made the required showing that the conflict between these defenses alone caused the jury to convict him. We do not agree.

■ The "strong presumption" that defendants jointly charged with committing an offense will be tried together, *Jennings v. United States*, 431 A.2d 552, 556 (D.C. 1981), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982), may be overcome by a sufficient demonstration of prejudice under Super.Ct.Crim.R. 14. However, "[a]n order denying severance under Rule 14 may be reversed only upon a clear showing of abuse of discretion." *Winestock v. United States*, 429 A.2d 519, 526 (D.C.1981). Before severance is compelled on the ground urged by Taylor, a defendant must show that an "inherent irreconcilability" results from "a clear and substantial contradiction between respective defenses," *Garris v. United States*, 559 A.2d 323, 329 (1989) (citation omitted), and further "that the irreconcilability creates a danger or risk that the jury will draw an improper conclusion from the existence of the conflicting defenses alone that both defendants are guilty." *Id.* at 329 (footnote omitted). In making this determination, the trial judge assays the amount "of evidence offered against the defendant, in-

---

5. The jury heard testimony from the police putting the street value of one ounce of liquid PCP at about $200.

6. Shorter also testified that after the robbery Taylor told Shorter and Lawrence that if he got caught he would "get" them.

dependent of the conflicting evidence presented by the codefendant," *id.;* to permit denial of the severance motion, there must be "enough independent evidence of a defendant's guilt—beyond that required for the government to survive a motion for judgment of acquittal—so that the judge reasonably could find, with substantial certainty, that the conflict in defenses alone would not sway the jury to find the defendant guilty." *Id.* at 330 (citing *Tillman v. United States,* 519 A.2d 166, 171 (D.C. 1986)). *See also Ingram v. United States,* 592 A.2d 992, 996 (D.C.1991).

The trial judge found and the government agrees, as do we, that the respective defenses of Taylor and Shorter were "not compatible." The differences are greater than those that might be expected normally in joint trials: the two scenarios, Taylor's denial that he was the robber, and Shorter's claim that Taylor was, cannot both accurately portray the events in the parking lot on the evening in question.

The issue thus boils down to Taylor's claim that the trial judge could not properly find the independent evidence of his guilt—beyond that necessary to support a motion for judgment of acquittal—to be sufficient to negate the likelihood the jury would find him guilty based on the conflict in defenses alone. The government points to our repeated observation that the testimony of a single eyewitness may be enough to overcome the danger of prejudice from conflicting defenses. *Reynolds v. United States,* 587 A.2d 1080, 1083 (D.C.1991); *Garris,* 559 A.2d at 330; *Tillman,* 519 A.2d at 171–72. Taylor responds that in these and other decisions to like effect the court has gone on to find evidence corroborating the identification, which he says is lacking here. We are not prepared to say, however, that a principle stated so often in our decisions is merely "dictum" in the absence

of corroborative evidence. We reiterate that a single positive and reliable identification may furnish the needed proof beyond that necessary to support a reasonable finding of guilt, though the identification must be carefully examined.

Taylor maintains that Welch's identification of him as the robber was significantly impeached. The record establishes the contrary. Welch was unequivocal in each of the three identifications of Taylor he made on the evening of the robbery. About three hours after the crime, he selected Taylor's picture from an eight-photograph array without hesitation. A short while later, he returned to the crime area where he pointed out Taylor—then wearing different clothes than those Welch initially described—as the robber. Soon after this sighting, the police detained Taylor and Welch again positively identified him. In court Welch identified Taylor as the man who took money from him at gunpoint, and identified Taylor's voice as the voice of the gunman on the audio recording of the robbery.

Reinforcing the strength of this identification is the opportunity Welch had to form a clear impression of the robber's face and his other distinguishing characteristics. Welch's view of the gunman was not obscured by darkness, and during much of the several-minute encounter he was close to the man who robbed him. At one point, with Welch in the driver's seat, the robber stood at the window of the front passenger side of the car; later he sat in the passenger seat next to Welch. Welch's powers of observation were sharpened by his training as an undercover police officer,[7] and his description of the gunman included specific details. Furthermore, Welch's recollection of the robber's appearance was corroborated by his contemporaneous recorded description of the assailant.[8]

---

7. He testified experience had taught him that the key to success as an undercover officer was the ability to remember "facial features, physical descriptions, [and] clothing descriptions" because that information would be important later in an investigation. Welch's care in making identifications is shown by the fact, see note 4, *supra,* that he exculpated on the scene three other persons detained shortly after the robbery who wore clothing similar to that of the robbers.

8. Contrary to appellant's contention, Welch's description of the gunman as having "a little bit of facial hair" accurately describes Taylor's appearance at the time of his arrest as reflected in the photograph taken at the time and included in the record on appeal. Welch's estimate of

In addition, although no other officer besides Welch was in a position to identify Taylor as the robber, Officer Prather described the man she watched, from a distance of about ten car lengths, approach and enter Welch's car and later flee the scene with two other men. She said the man had worn a white shirt with a thick dark blue stripe around the middle and blue shorts, contrasting only slightly in color with Welch's description. Appellant argues that this testimony is "meaningless" as corroboration because it did not confirm Welch's identification of Taylor. Welch, however, firmly recalled Taylor as having worn clothing of the kind Prather described, and hence her description lent at least some further solidity to his identification. *Cf. United States v. Johnson*, 191 U.S.App.D.C. 193, 196, 589 F.2d 716, 719 (1978) (evidence corroborating confession need not itself identify perpetrator to have confirmatory significance).

All told, then, we are satisfied there was sufficient evidence in the record, beyond that needed to survive a motion for acquittal, to support the trial judge's conclusion that the conflicting defenses alone would not cause the jury to find Taylor guilty.[9] On this record there was not the clear abuse of discretion required to permit reversal.

### IV.

[5] We turn finally to Taylor's claim that the trial judge erred in refusing to allow him to conduct a demonstration of his voice without subjecting himself to cross-examination.

The purpose of the proposed voice exemplar was to allow the jury to compare Taylor's voice with the voice of the gunman on the tape made by the device in Welch's car.[10] Taylor's counsel suggested that the format for the demonstration be "to play the tape and to have Mr. Taylor speak the words that he hears on the tape."[11] Counsel argued that because appellant would only recite the words used by the gunman on the tape "from the well of the court," he would not be testifying and thus would not waive his Fifth Amendment privilege against self-incrimination. The trial judge rejected the proposed demonstration, ruling that appellant could provide the jury with the opportunity to hear his voice only if "he's going to be on the stand and under oath."

The basis for the judge's ruling was his assumption that the voice demonstration

---

the gunman's height at "about 5'8" to 5'10"" does not differ greatly from Taylor's actual height of five feet six inches and is a reasonable approximation since Taylor was seated during much of the time Welch observed him.

**9.** In denying the motion for severance before trial, the judge, while conceding that the defenses would be incompatible, pointed out the additional "prong" the defense had to satisfy, *i.e.*, "that because of the defenses both of them would be convicted, simply because of the conflict." Appellant argues from this that the judge misapprehended the proper standard under *Garris* and *Tillman, supra*, but we find nothing in the record to suggest the court was unaware of the requirement that there be independent evidence of a defendant's guilt *beyond* that needed to survive a motion for judgment of acquittal.

In light of Welch's firm and repeated identifications of Taylor, this case is unlike *Johnson v. United States*, 398 A.2d 354 (D.C.1979), in which the testifying codefendant in effect became the "star witness" against the defendant. *Id.* at 368. *See Mitchell v. United States*, 569 A.2d 177, 182 (D.C.) ("[a]ppellant's general denial was not con-

tradicted solely or even primarily by [codefendant's] defense" even though codefendant's counsel became a "second prosecutor"; no abuse of discretion in refusal to sever), *cert. denied*, —— U.S. ——, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990).

**10.** The tape of the robbery was played for the jury during trial, and a transcript of the tape was given to each juror while the tape was being played.

**11.** Alternate tape formats for the proposed live voice exemplar were neither discussed nor considered at trial. In his brief on appeal, Taylor asserts that the record provides no evidence that he would not "have conducted the demonstration of his voice in any reasonable fashion." At oral argument, Taylor's counsel indicated that a means of presenting a sample of Taylor's voice to the jury other than the live demonstration suggested initially would be acceptable. Throughout this opinion, we use the phrases "voice exemplar," "voice sample," and "voice demonstration" interchangeably and make no assumption that one format is necessarily more appropriate here as evidence than any other.

would amount to giving testimony. In the judge's view, allowing appellant to speak the gunman's words within the jury's hearing would be permitting him to "deny that he said those things" without adversarial testing. Such a "denial" was inappropriate and appellant could not "just make oral statements" without also taking the witness stand and submitting to cross-examination.

■■■ We cannot accept this underlying premise. As the government concedes in its brief, a voice exemplar is demonstrative, not testimonial evidence. That principle is well established. *United States v. Dionisio,* 410 U.S. 1, 6–7, 93 S.Ct. 764, 767–68, 35 L.Ed.2d 67 (1973); *United States v. Wade,* 388 U.S. 218, 222–23, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967); *United States v. Williams,* 704 F.2d 315, 320 (6th Cir.), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983) ("defendant compelled to give a live voice exemplar is not a witness for purposes of evolving testimonial evidence"). The government can compel an accused to provide a voice exemplar without violating the privilege against self-incrimination since a person's voice is "an identifying physical characteristic outside [Fifth Amendment] protection." *Gilbert v. California,* 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967). A voice exemplar carries no communicative or otherwise testimonial component; it serves only to demonstrate the inherent physical properties of a particular voice. *See United States v. Dionisio,* 410 U.S. at 7, 93 S.Ct. at 768.[12] We see no reason, in principle, for denying a defendant the right to offer similar non-testimonial evidence without waiving Fifth Amendment protections. Therefore, the judge could not properly exclude the voice exemplar on the ground that Taylor refused to take the witness stand and submit to cross-examination about his involvement in the crime.

■■■ The government argues that certain language of the trial judge indicates that, in the alternative, he exercised his discretion to exclude this particular proffered demonstration as unreliable. However, review of the judge's entire colloquy with counsel leaves no doubt that his ruling was shaped primarily by his conception of the testimonial nature of the evidence. *See Johnson v. United States,* 398 A.2d at 365 (D.C.1979) (sound exercise of discretion may be undermined by reliance on improper factor). The government also argues that any putative error in excluding the voice demonstration was harmless in light of the strength of Officer Welch's identification of Taylor. We cannot agree. It is unnecessary to decide whether, assuming error in the exclusion, the appropriate test for assaying harmlessness here is furnished by *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), or *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Under either standard, we conclude the exclusion of the exemplar—if improper—would not have been harmless error. The prosecutor played the tape recording of the robbery to the jury, and Welch identified Taylor's voice on the tape as that of the gunman in the robbery. Appellant's contention was that his voice did not appear on the recording because he was not present at the scene. Given the importance to the government's case of the recording and Welch's identification, we cannot hold with firm assurance that an opportunity to compare Taylor's voice with the voice on the recording would have had no effect on the jury's decision.[13]

■■■ At the same time, we cannot agree with Taylor that the proper remedy at this point for exclusion of the exemplar is outright reversal and a new trial. Deci-

---

**12.** *See also Brooks v. United States,* 494 A.2d 922, 924 n. 1 (D.C.1984) (collecting cases in which federal courts have upheld the compelled production of various kinds of demonstrative evidence because no Fifth Amendment interests are implicated).

**13.** Nor are we persuaded on this record by the government's additional argument that, assuming the court were to remand to the trial court for proper exercise of its discretion regarding admission of the exemplar, see text, *infra,* we should defer until later any consideration of the effect of an erroneous exclusion on the outcome.

sions regarding the admission of demonstrative evidence rest within the broad discretion of the trial court, *Irick v. United States*, 565 A.2d 26, 39–40 (D.C.1989), and may entail foundational inquiry into the trustworthiness of the proffered evidence. *See United States v. Esdaille*, 769 F.2d 104, 107 (2d Cir.), *cert. denied*, 474 U.S. 923, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985) ("the fact that exhibition of a physical characteristic is not testimonial in nature, and hence may be compelled at some stage, does not require its admissibility into evidence"; trial court "properly focused principally ... not on whether the proposed exemplar was testimonial but on whether it was reliable"); *People v. Scarola*, 71 N.Y.2d 769, 776–77, 525 N.E.2d 728, 731–32, 530 N.Y.S.2d 83, 86 (1988) (test of admissibility of voice exemplar is "whether it is relevant and reliable"). Here the trial judge's emphasis on the purported testimonial character of the demonstration foreclosed any meaningful consideration of whether it would satisfy minimal reliability. To order a new trial at the present stage, however, this court would have to be able to conclude that the reliability question can have only one proper answer, something we cannot do on the present record. Instead we will adopt the course chosen previously by this court and remand the case for the trial judge "to exercise proper discretion ... 'unfettered by [the] erroneous legal thinking'" that shaped his ruling. *Collins v. United States*, 596 A.2d 489, 494–95 (D.C.1991) (quoting *Wright v. United States*, 508 A.2d 915, 919 (D.C.1986)); *see also Barrera v. United States*, 599 A.2d 1119, 1133 (D.C.1991); *Henderson v. United States*, 527 A.2d 1262, 1269 (D.C. 1987). If, after considering the appropriate factors,[14] the judge concludes that the voice exemplar should have been admitted, he shall order a new trial. If he adheres to his decision excluding the demonstration, appellant's conviction shall stand affirmed

subject to the right to appeal the trial court's ruling. *Collins*, 596 A.2d at 495.

*So ordered.*

WAGNER, Associate Judge, concurring in part, dissenting in part:

I join in the majority opinion except with respect to its disposition of appellant Taylor's argument that the trial court erred in refusing to allow a demonstration of his voice to the jury. Although I agree with the majority that the trial court's reason for the ruling was erroneous insofar as premised on the assumption that the proffered demonstration was testimonial and excludable unless appellant submitted to cross-examination, I cannot agree that the trial court did not provide a valid alternative basis for its decision which should be affirmed. The record reflects that the grounds for the trial court's alternative ruling were the unreliability of the evidence because of appellant's failure to show that a recorded voice and a live voice will sound the same and because of appellant's failure to proffer an expert to explain the significance of any comparison. The absence of substantially similar conditions is a legitimate reason for the trial court, in the exercise of its discretion, to exclude demonstration evidence which might confuse or mislead the jury. *McKnight v. Wire Properties*, 288 A.2d 405, 407 (D.C.1972); *see Jackson v. Fletcher*, 647 F.2d 1020, 1027 (10th Cir.1981). In my opinion, the trial court did not abuse its discretion in excluding the evidence, and a remand for further elaboration by the court on its reasons for doing so is not warranted.

The majority rejects the government's argument that the trial court made an alternative ruling on discretionary grounds, finding that the decision was "shaped primarily by (the court's) conception of the testimonial nature of the evidence." Although the decision may have been based primarily upon an erroneous legal ground, the decision was also based on a separate,

---

**14.** In addition to *Esdaille* and *Scarola, supra*, the trial judge may find guidance in *People v. Acevedo*, 40 N.Y.2d 701, 358 N.E.2d 495, 389 N.Y.S.2d 811 (1976), and *State v. Johnson*, 183

Conn. 156, 438 A.2d 855 (1981). *See also Hillman v. Funderburk*, 504 A.2d 596, 600 (D.C. 1986); *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

alternative discretionary ground.[1] In my view, the erroneous legal reason was a separate consideration and not a factor in the trial court's alternative discretionary ruling. The trial court considered the issue on two separate days. On the first day, refusing to admit the evidence and characterizing the proposed demonstration as a denial, the trial court nevertheless invited appellant's trial counsel to submit authorities supporting his position. On the next afternoon, having read the cases submitted (*United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *Brooks v. United States*, 494 A.2d 922 (D.C.1984); and *Hill v. United States*, 367 A.2d 110 (D.C.1976)),[2] the trial court persisted in its earlier legal conclusion; however, it specified an alternative discretionary basis for its ruling as follows:

> THE COURT: Sir, I know you disagree with it, but I'm saying, I have stated my reasons. And, moreover, Mr. Horton, there is nothing been shown to me, and I don't think it would persuade me in any manner any differently, that the voice that one hears from a defendant in this room, is going to be the same sounding voice as something that comes over a tape.
>
> But now, leaving that aside you haven't even proffered that, that an expert would testify to that. But, moreover, I'm saying, my position is, you're using, trying these cases as a means to have your client get up there and in effect, deny that is his voice, without being subject to cross-examination, and my answer is, no.

In my opinion, the trial court did not abuse its discretion in rejecting the evidence for lack of reliability, given its slight probative value in the context of this case. *See People v. Scarola*, 71 N.Y.2d 769, 779, 530

N.Y.S.2d 83, 87, 525 N.E.2d 728, 732 (N.Y. 1988).

The trial court has broad discretion to determine whether to allow a demonstration during trial. *Irick v. United States*, 565 A.2d 26, 39 (D.C.1989). The trial court, in the exercise of its discretion, may exclude evidence if its probative value is outweighed by its tendency to prejudice the other side or to mislead the jury even if the evidence is relevant and technically admissible. *Reed v. United States*, 584 A.2d 585, 591 (D.C.1990); *Scarola, supra*, 71 N.Y.2d at 777, 530 N.Y.S.2d at 86, 525 N.E.2d at 732. Its decision to exclude demonstrative evidence should not be disturbed absent an abuse of discretion. *See Irick*, 565 A.2d at 40; *see also Scarola*, 71 N.Y.2d at 777, 530 N.Y.S.2d at 86, 525 N.E.2d at 732; *United States v. Esdaille*, 769 F.2d 104, 108 (2d Cir.), *cert. denied*, 474 U.S. 923, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985).

"The test of whether voice exemplar evidence should be admitted as real or demonstrative evidence ... is whether it is relevant and reliable." *Scarola, supra*, 71 N.Y.2d at 777, 530 N.Y.S.2d at 86, 525 N.E.2d at 732. Trustworthiness and reliability are typically pertinent considerations to the trial court's exercise of discretion when determining whether to admit such evidence. *Id.; Esdaille, supra*, 769 F.2d at 108; *see also Springer v. United States*, 388 A.2d 846, 852 (D.C.1978).[3] In *Scarola*, observing that voice exemplar evidence is easy to feign, the Court of Appeals of New York found no abuse of discretion in the trial court's exclusion of a voice exemplar to demonstrate a speech impediment or nasal quality. 71 N.Y.2d at 778–79, 530 N.Y.S.2d at 87, 525 N.E.2d at 733. The victims in the cases did not rely on the appellants' voices in making the identifications; therefore, the court found no abuse of discretion in the determination that its

**1.** This is not a case like *Wright v. United States*, 508 A.2d 915 (D.C.1986) where there is no indication that the trial judge believed he had discretion, and the appellate court would have had to supply the missing discretionary reason to uphold the decision. *Id.* at 919.

**2.** These cases hold that compelled production of a voice or other physical demonstration is not

testimonial. When the trial court made its final decision on the evidentiary question, it was aware of these holdings.

**3.** A portion of *Springer*, not pertinent here, has been overruled. *See Bassil v. United States*, 517 A.2d 714, 717 n. 5 (D.C.1986).

probative value was "outweighed by its unreliability and potential for prejudice." *Id.* Similarly, in *Esdaille*, the Second Circuit found no abuse of discretion in the exclusion of a voice demonstration proffered to show that the defendant had a heavy Caribbean accent in light of lack of inherent trustworthiness and difficulty in testing the authenticity of the accent. 769 F.2d at 108. The slight probative value of the demonstration, given the visual identification of Esdaille as the perpetrator of the crime, was found to be substantially outweighed by the unfair prejudice created by the lack of reliability. *Id.*

This case is similar to *Scarola* and *Esdaille*. Here, the police officer did not rely on appellant's voice to identify him as the perpetrator of the crime. Only if the jury believed the officer's visual identification of appellant could they convict him.[4] *See Id.*, at 108 (relevance of voice demonstration only slight where witness did not rely on it in making the identification). The probative value of the demonstration here was only slight. The trial court's concern that the proffered voice demonstration was not shown to be nearly identical to a taped voice and the absence of an expert to explain any variations are legitimate considerations in determining whether the evidence is prejudicial and misleading. *See McKnight, supra,* 288 A.2d at 407. Under the circumstances, I would find that the trial court did not abuse its discretion in excluding evidence of questionable reliability which had only slight probative value. *See Esdaille,* 769 F.2d at 108. A remand for the trial judge to elaborate further or "to exercise proper discretion" on the admissibility of the voice demonstration, as the court holds, is not warranted in my opinion. For the foregoing reasons, I respectfully dissent from the court's disposition of this issue.

---

**4.** Since the officer did not rely on appellant's voice to identify him as the perpetrator of the crime, the error, if any, in exclusion of the voice demonstration would be harmless even under the *Chapman* standard. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).